**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| BRANDON AUSTIN, individually, <br><br> Plaintiff, <br><br> vs. <br><br> HARBOR FREIGHT TOOLS USA, INC., a foreign corporation; and JOHN DOES 1-5, <br><br> Defendants | No. 3:17-cv-06028-BHS <br><br> **PLAINTIFF'S DISCLOSURE OF REBUTTAL EXPERT TESTIMONY UNDER FRCP 26(a)(2)** |

## I.   INTRODUCTION

**COMES NOW** Plaintiff Brandon Austin, by and through his attorneys, Darrell L. Cochran, Nicholas B. Douglas, and Pfau Cochran Vertetis Amala and submits the following rebuttal expert disclosures under Rule 26(a)(2)(A) and (B) and this Court's Minute Order Setting Trial, Pretrial Dates, and Ordering Mediation.

Plaintiff expressly reserves the right to call named witnesses as part of their case-in-chief and as rebuttal expert witnesses, and further reserves the right to determine that he will not call one or more of the following witnesses at trial.  This disclosure is based on currently available information and in reasonable anticipation of the theories of liability and damages of Plaintiff.  Plaintiff expressly reserves the right to add additional witnesses or witness testimony as facts become known in discovery. Plaintiff also expressly reserves the right to call all witnesses disclosed by any other party to this litigation.

PLAINTIF'S DISCLOSURE OF REBUTTAL
EXPERT TESTIMONY UNDER FRCP 26(a)(2)

Page 1 | 3:17-cv-06028



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

These expert witnesses will be made available for deposition.  The sole purpose for which they may be deposed is that of defense counsel acquainting themselves with their opinions and conclusions.

## II.   PLAINTIFF'S REBUTTAL EXPERT WITNESSES

1. Dr. Jesse A. Grantham
   Welding & Joining Management Group
   3756 Monarch St.
   Frederick, CO 80516

**A.  Statement of all opinions that will be expressed.**

The opinions Dr. Grantham will express are summarized in his rebuttal report, appended hereto as **Exhibit 1**.  Dr. Grantham's opinions and conclusions will be further refined pending review of additional records or testimony.  Plaintiffs will supplement as needed according to the FRCP.

**B.  Facts or data considered.**

Dr. Grantham has specialized training, background, and expertise as an expert in engineering.  He has reviewed records produced in this matter and had conducted laboratory testing to support his conclusions.  He has also reviewed defense experts John Schumacher's and Shawn Sapp's report.

**C.  Exhibits that will be used to summarize or support opinions.**

Plaintiff anticipates using illustrative or demonstrative exhibits during Dr. Grantham's trial testimony to summarize or support his opinions.  Plaintiff will supplement as needed according to the FRCP.

**D.  Witnesses' qualifications, including a list of publications.**

Dr. Grantham's qualifications and list of publications is provided in his CV, which is appended to Plaintiff's disclosure of expert witnesses.

**E.  A list of other cases that have been testified to in the last four years.**

A listing of Dr. Grantham's testimony over the course of the past four years is appended to Plaintiff's disclosure of expert witnesses.

PLAINTIF'S DISCLOSURE OF REBUTTAL
EXPERT TESTIMONY UNDER FRCP 26(a)(2)

Page 2 | 3:17-cv-06028



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1   **F.  Statement of compensation to be paid for study and testimony in the case.**

Dr. Grantham's fee schedule has previously been disclosed.

RESPECTFULLY SUBMITTED this 28th day of January, 2019.

                PFAU COCHRAN VERTETIS AMALA, PLLC

                By /s/ Darrell L. Cochran
                Darrell L. Cochran, WSBA No. 22851
                Nicholas B. Douglas, WSBA No. 49786
                Attorneys for Plaintiff

PLAINTIF'S DISCLOSURE OF REBUTTAL
EXPERT TESTIMONY UNDER FRCP 26(a)(2)

Page 3 | 3:17-cv-06028



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

**CERTIFICATE OF SERVICE**

I, **Sarah Awes**, hereby declare under penalty of perjury under the laws of the State of Washington and the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I served the foregoing via the Court's Electronic Service System by directing delivery to the following individuals:

Diane Polscer
GORDON & POLSCER, LLC
9755 S.W. Barnes Rd. Suite 650
Portland, OR 97225
(503) 242-2922
dpolscer@gordon-polscer.com

Bob Meyers
Kevin Sutherland
Christian Johnson
CLYDE & CO US LLP
701 Fifth Ave, 42nd Floor
Seattle, WA 98104
Bob.meyers@clydeco.us

Robert Spajic
BULLIVAN HOUSER BAILEY
888 S.W, Fifth Avenue, Suite 300
Portland, OR 97204-2017
Robert.spajic@bullivant.com

DATED this 28th day of January, 2019.

/s/ Sarah Awes
Sarah Awes

PLAINTIF'S DISCLOSURE OF REBUTTAL
EXPERT TESTIMONY UNDER FRCP 26(a)(2)

Page 4 | 3:17-cv-06028



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# EXHIBIT 1

# Welding & Joining Management Group
### FORENSIC EXPERTS • METALS TESTING

January 28, 2019

Mr. Cole Douglas, Attorney
Pfau Cochran Vertetis Amala PLLC
911 Pacific Avenue, Suite 200
Tacoma WA 98402

Subject: Case Number 3:17-cv-06028-BHS, Brandon Austin (Plaintiff) v. Harbor Freight Tools, USA, Inc. Defendant

1. Defendant's Engineering Investigation Report dated December 7, 2018.
2. My Preliminary Assessments dated January 14, 2019, of Subject Torch and Hose of Weed-Burner Assembly Examinations at ESI labs in Seattle WA, on June 3rd and October 18, 2018.
3. Greenwood Propane Torch – Owner's Manual & Safety Instructions, Item 91033
4. Greenwood Propane Torch – Owner's Manual & Safety Instructions, Item 61589

Dear Mr. Douglas,

As requested, please see my rebuttal report to Defendant Harbor Freight Tools' expert report dated December 7, 2018.

The Exemplar torch and hose assembly, and Subject torch and hose assembly are shown in Figure 1. Photographs were at ESI in Seattle, WA. Figures 1-4.



Figure 1.  Exemplar Assembly & Subject Assembly.



Figure 2.  Packaging - Greenwood Item 91033.



Figure 3.  Exemplar Assembly & Subject Assembly.



Figure 4.  Exemplar Connection & Subject Hose Connection.

3756 Monarch Street • Frederick, Colorado 80516 • www.WJMG.com
OFFICE: 303-451-6759 • FAX: 303-280-4747 • TOLL-FREE: 800-987-9269

1 of 7


# Welding & Joining Management Group
FORENSIC EXPERTS • METALS TESTING

The Defendant's expert report contained seven (7) conclusions. My rebuttal responses can be found below:

1. **The subject propane torch was positively identified as a Greenwood Propane Torch Item 61589. Any reference to or testing performed on a Greenwood Propane Torch Item 91033 is irrelevant, invalid, and misleading.**

   **Rebuttal:** Prior to receiving a copy of Defendant's expert report on December 7, 2018, it was my understanding that the subject propane torch had been already been positively identified as a Greenwood Propane Torch Item 91033. Not only did Plaintiff's purchase and sale information indicate that he had purchased a Greenwood Propane Torch Item 91033, but the physical characteristics of the subject torch were extremely similar to the physical characteristics of an exemplar Item 91033 torch. Although the subject torch did not match the exemplar 91033 torch exactly, the Owner's Manual and the product packaging specifically stated that "due to continuing improvements, actual product may differ slightly from the product described herein." In addition, following the Product ID Examination on June 3, 2018, Defendant responded to Plaintiff's discovery responses with answers indicating that the subject torch in question was in fact a Greenwood Propane Torch Item 91033.

   Going into Destructive Testing on October 18, 2018, I believed that the product identity of the subject torch was no longer in dispute. If I had any doubt regarding product identity, however, the protocol for Destructive Testing required each party to bring an exemplar torch for testing. If Defendant's experts had brought an exemplar 61589 torch for testing, that would have alerted me that Defendant had identified the subject torch as Item 61589, instead of Item 91033 which it previously identified as the subject torch in its discovery responses. Defendant's experts did not bring an exemplar 61589 torch for testing. Instead, they assisted me in testing the exemplar 91033 torch that I had provided pursuant to the protocol.

   The first time I learned that Defendant's experts had allegedly identified the subject torch as a Greenwood Propane Torch Item 61589 was on upon receipt of Defendant's experts' report. If Defendant's experts have correctly identified the subject torch as Item 61589, I will need to conduct additional testing on Item 61589 exemplars to determine if there is a defect in the torch assembly. To date, I have not been provided with exemplar 61589 torches for testing; I have only been provided with a limited number of documents pertaining to Item 61589 and its Owner's Manual. I know that Plaintiff's counsel requested 61589 exemplars for testing following receipt of Defendant's expert report, but they have not yet been provided by Defendant.

   Although I have been able to conclude on a more probable than not basis and based on a reasonable degree of scientific certainty the subject supply hose fractured and failed in a brittle mode after 20 minutes of cryogenic gas flow causing injuries to Plaintiff, that does not mean that the subject torch also does not also have a manufacturing and/or design defect that contributed to Plaintiff's injuries. Testing on exemplar Greenwood Propane Torches Item 61589 is necessary in order to make that determination.

2. **Fugitive propane gas from the torch assembly fueled the flash fire incident that injured Mr. Austin.**

   **Rebuttal:** Unintended, leaking propane gas from the hose assembly fueled the flash fire incident that injured Plaintiff. See my January 14, 2019 report for greater details. As stated above, additional testing will need to be conducted on exemplar Greenwood Propane Torches Item 61589 to determine if a separate defect in the torch assembly also contributed to Plaintiff's injuries.

3. **The most probable ignition source for the fugitive propane gas was the torch burner flame.**

   **Rebuttal:** Likely, yet unsubstantiated ignition sources for the leaking propane gas from the hose assembly were the torch burner flame, burning embers, burning weeds or grass near Plaintiff. Because the torch burner flame was the closest ignition source to the gaping hole in the hose at the inlet connection of the torch, the torch burner flame more probably than not caused the leaking gas to ignite.

4. **The torch/hose inverted flare connection was the location of the propane gas leak fueling the flash fire.**

3756 Monarch Street • Frederick, Colorado 80516 • www.WJMG.com
OFFICE: 303-451-6759 • FAX: 303-280-4747 • TOLL-FREE: 800-987-9269

2 of 7

# Welding & Joining Management Group
### FORENSIC EXPERTS • METALS TESTING

**Rebuttal:** See my January 14, 2019 report, specifically the section titled "Plaintiff's Elevated Thermal Assessments – Inverted Flare Connection Brass Nut."  Possible reasons for the alleged loose brass nut were described. According to Plaintiffs interrogatory responses and plaintiff's direct verbal description of events to me, the plaintiff fully tightened the brass nut pursuant to the torch's operating instructions and then used the subject propane torch continuously for 20 minutes before the flare-up incident occurred.  On a more probable than not basis and based on a reasonable degree of scientific certainty, the brass nut was exposed to elevated temperatures of the fire, which subjected the brass nut to thermal expansion forces. Calculations showed that the brass nut expanded sufficiently to loosen the nut in the threads as a result of the coefficient of thermal expansion of brass and degradation of the O-ring integral within the assembly. The threads and O-ring were required to uphold a "no-leak" condition of the brass nut tightened onto the torch inlet connector.

5. **A mechanical failure of the hose at the crimp connection did not cause the propane leak.**

**Rebuttal:** See my January 14, 2019 report.  In my laboratory, I examined and mechanically tested 20 flexible connector hoses manufactured by two companies for Greenwood propane torches 61589 and 91033. The hoses were identified as: Chuan (Made in China) and Tecnotubi (Made in Italy).  Propane vaporizes at -44°F and both types of the hoses were minimally listed by the manufacturers as intended for use at -40°F lowest temperature rating. Lab tests showed that both hoses were subject to brittle-fracture effects at -10°F.



Figure 5.  Exemplar Hose & Subject Hose Connection.



Figure 6. Hoses, Chuan (China) & Tecnotubi (Italy).

The subject hose, which was labeled as Chuan, fractured and opened near the metal crimp termination of the hose at connection to the torch body.  Figures 5 – 8.  The opening in the hose leaked propane gas near the inlet connection fitting at the torch body and ignited without warning and injured Plaintiff.



Figure 7.  Subject Chuan Hose – Bulged at Fracture.



Figure 8. Subject Chuan Hose – Bulged at Fracture

3756 Monarch Street • Frederick, Colorado 80516 • www.WJMG.com
OFFICE: 303-451-6759 • FAX: 303-280-4747 • TOLL-FREE: 800-987-9269

3 of 7

# Welding & Joining Management Group
FORENSIC EXPERTS • METALS TESTING

On a more probable than not basis and based on a reasonable degree of scientific certainty the cause of the propane leak and fire that injured Mr. Austin was mechanical failure of the flexible connector hose at the crimp connection to the propane torch. Figure 5 and Figure 7.

The mechanical failure in this case was not surprising given the fact that the subject hose and the exemplar hoses tested in my laboratory failed to comply with any listed industry standard. Assessments of the Chuan and Tecnotubi hoses indicated that both hoses were non-compliant and did not have proof of compliance with Canadian Standards Association ("CSA") or Underwriters Laboratories ("UL") standards with stencil markings for "maximum allowable working pressure" on the outer cover.

The Greenwood Owner's Manual and Safety Instructions for Items 61589 and 91033 on Page 5 stated that the use of the product must be in conformity with local codes, or in the absence of local codes, with the standard for storage and Handling of Liquefied Petroleum Gases, ANSI/NFPA 58 LP Gas Code. Based on lab testing, neither hose paired with Items 61589 or 91033 conformed with the NFPA 58 LP Gas Code standard.

According to NFPA 58 Section 5.9.6 Hose, Hose Connections and Flexible Connectors used to convey LP-Gas liquid or vapor at pressures in excess of 5 psig shall be designed for a working pressure of at least 350 psig, with a safety factor of 5 to 1 and comply with UL 569, Standard for Flexible Hose Connectors for LP Gas or UL 21 Standard for LP-Gas hose. The Chuan hose and Tecnotubi hose were rated at 350 psi, but during laboratory testing of exemplars, neither hose was capable of achieving the required maximum allowable working pressure safety factor of 5 to 1 as listed in the gas code.

The Chuan hose was marked as conforming to CSA 8.3/UL 21 standards, but lab testing indicated that the hose was not in compliance with those standards either. The Tecnotubi hose, on the other hand, was unmarked and failed to indicate conformance with any LP gas standard – a LP gas standard stencil marking was missing completely from the hose. The UL 21 standard directly referenced UL 569 standard which required the hose to be capable of withstanding 5 times the inlet pressure of 97 psi. Again, that standard was not met for either hose.

There were also no serial numbers or references to American Gas Association ("AGA"), American Society of Testing and Materials ("ASTM"), CSA or UL approvals on the weed-burner body, components or the brass hose fittings for either Item 61589 or 91033. As a result, the brass connector quality and integrity of each hose is unknown.

NFPA 58, LP Gas Code, Section 5.9.6.4 requires that LP gas hoses be stencil marked to provide at least the following information: LP-Gas hose, Maximum working pressure, Manufacturer's name, month and year of manufacture. The Tecnotubi hoses did not have the required CSA 83 / UL 21 information stencil marked on the exterior covering as required by the NFPA 58 LP Gas Code.

NFPA 58 LP Gas Code directly references UL 21 Standard for LP-Gas Hose and UL 569 Standard for Pigtails and Flexible Hose Connectors for LP- Gas. UL 569 Section 4. Flexible Hose Connector, Section 4.1 requires that hoses with connectors on each end shall not exceed 60 inches in length. The Chuan hose and Tecnotubi hose, each measured 80 inches in length. The lengths exceeded the approved hose length of 60 inches as required by in the NFPA 59 Gas Code and UL 569 Standard.

6. **Failure by Mr. Austin to correctly make a secure, gas-tight connection using wrenches at the time the hose was attached to the torch fitting caused the propane leak that eventually injured him.**

   **Rebuttal:** Plaintiff's interrogatory responses and direct verbal description of events to me were that he securely tightened the hose to the torch pursuant to the instructions contained in the manual. After securely tightening each nut, he then used the propane torch continuously for 20 minutes without issue before the gas flare-up incident occurred.

   Because Plaintiff was able to securely tighten the hose to the torch and successfully use it without issue for approximately 20 minutes, that demonstrates on a more probable than not basis, that the hose to torch connection was

securely fastened by Plaintiff prior to use. As discussed above, as well as in my January 14, 2019 report, the continuous use of the propane torch for 20 minutes caused hose degradation, bulging and leaks from cryogenic thermal effects on the Chuan hose at the connection. The subject Chuan hose fractured, bulged and opened at the "short bend radius" by the metal crimp termination at the inlet connection. Figures 7 – 8. The hose fractured, and propane gas leaked and ignited without warning injuring Plaintiff.

Additional testing, however, will need to be conducted on exemplar Greenwood Propane Torches Item 61589 to determine if a separate defect in the torch assembly also contributed to Plaintiff's injuries.

7. **Mr. Austin failed to follow the Torch Manual instructions, which require him to check for leaks using a soap solution when connecting the hose to the torch and propane cylinder.**

    **Rebuttal:** Defendant's experts insinuate that Plaintiff's alleged failure to perform a soap and water test as instructed in the torch manual is what caused Plaintiff's injuries. Plaintiff's alleged failure to perform a soap and water test has no bearing on Plaintiff's injuries. According to Plaintiff's interrogatory responses and my conversation with Plaintiff regarding the events surrounding his injuries, Plaintiff read and followed the instructions from the manual. After securely connecting and tightening the subject hose to the subject torch per the instructions, Plaintiff used the propane torch continuously for 20 minutes before the flare-up incident occurred. Because Plaintiff was able to safely use the propane torch for 20 minutes time, that indicates on a more probable than not basis that a soap and water test, if performed, would not have indicated any leaks. Further, the source of the propane leak was a break in the subject hose after becoming brittle from 20 minutes of continued use. See my January 14, 2019 report. Therefore, if a soap and water test had been conducted, no leaks would have appeared prior to use because at that point the hose was still fully intact.

    Defendant's experts' reliance on the soap and water test is misguided. As stated in my January 14, 2019 report, if the Owner's Manual & Safety Instructions for the subject torch had included the proper and necessary warnings, Plaintiff would have never used the subject torch in the first place, rendering the soap and water test irrelevant.

The findings, conclusions and opinions expressed herein represent a reasonable degree of professional certainty as an engineering expert. These assessments were based on visual observations and information available to date. Conclusions and opinions may be modified as a result of additional findings revealed in the course of future examinations, inspections, nondestructive testing or failure analysis by myself or others.

*[signature]*

Jesse A. Grantham, PhD, PE, Principal Investigator

3756 Monarch Street • Frederick, Colorado 80516 • www.WJMG.com
OFFICE: 303-451-6759 • FAX: 303-280-4747 • TOLL-FREE: 800-987-9269

5 of 7

# Welding & Joining Management Group
FORENSIC EXPERTS • METALS TESTING

References:

1. National Fire Protection Association (NFPA) 58, Liquefied Petroleum (LP) Gas Code, 2014 Edition. Prepared by the Technical Committee on Liquefied Petroleum Gases and acted on by NFPA in June 2013. Table B.1.2 (a) Approximate Properties of LP-Gases (English), page 58-109.

2. Eugene Z. Avallone, Theodore Baumeister III, Marks' Standard Handbook for Mechanical Engineers, Tenth Edition 1996. Table 6.4.17 Composition and Properties of Selected Wrought Copper and Copper Alloys, pages 6-66 through 6-69.

3. National Fire Protection Association (NFPA) 921, Guide for Fire and Explosion Investigations, 2008 Edition. Prepared by the Technical Committee on Fire and Explosion Investigations, Table 5.6.5.1 Maximum Time Averaged Flame Temperatures Measured on the Centerline of Fires Involving a Range of Fuels., page 921-25

4. Torch Examination Protocol, September 7, 2018. Case Number 3:17-cv-06028-BHS, Brandon Austin (Plaintiff) v. Harbor Freight Tools, USA, Inc. (Defendant).

5. United States Consumer Product Safety Commission (CPSC), CPSC Harbor Freight Tools Announce Recall Propane Torches, Release # 1-139b. May 2, 2001. Link:

    https://www.cpsc.gov/Recalls/2001/cpsc-harbor-freight-tools-announce-recall-propane-torches

6. National Fire Protection Association (NFPA) 58, Liquefied Petroleum Gas Code, 2014 Edition. Prepared by the Technical Committee on Liquefied Petroleum Gases and acted on by NFPA in June 2013. Table B.1.2 (a) Approximate Properties of LP-Gases (English), page 58.

7. UL 21 Standard for LP-Gas Hose - 2015

8. UL 569 Standard for Pigtails and Flexible Hose Connectors for LP Gas, 2013.

9. Bates Number HFT 00117, Owner's Manual & Safety Instructions Greenwood Propane Torch Item 61589.

10. Owner's Manual & Safety Instructions Greenwood Propane Torch Item 91033. Greenwood 3491 Mission Oaks Blvd. PO Box 6009 Camarillo CA 93011.

11. Hose Safety Institute Handbook for the Design and Specification of Hose Assemblies. Version 1.2, August, 2015

12. Harbor Freight Tools USA Inc.'s Responses to Plaintiff's First Interrogatories

13. Harbor Freight Tools USA Inc.'s Supplemental Response to Plaintiff's First Requests for Production of Documents

14. Harbor Freight Tools USA Inc.'s Responses to Plaintiff's Second Interrogatories

3756 Monarch Street • Frederick, Colorado 80516 • www.WJMG.com
OFFICE: 303-451-6759 • FAX: 303-280-4747 • TOLL-FREE: 800-987-9269

6 of 7